UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 09-2920-CMM

UNITED STATES OF AMERICA

vs.

MONIKA BLACIO,
          Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes  __x__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes  __x__ No

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

BY: _____
RYAN STUMPHAUZER
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0012176
99 N. E. 4th Street
Miami, Florida  33132-2111
TEL (305) 961-9322
FAX (305) 530-6168

AO 91 (Rev. 01/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| MONIKA BLACIO, | ) | Case No. 09-2920-CMM |
| | ) | |
| _____ | ) | |
| Defendant | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  07/06/2009  in the county of  Miami-Dade  in the  Southern  District of  Florida , the defendant violated  18  U. S. C. §  1001(a)(2) , an offense described as follows:

Material False Statement in Matter Within Jurisdiction of United States Government.

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Liz S. Santamaria, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  07/08/2009

*Judge's signature*

City and state:  Miami, Florida

Chris M. McAliley
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Liz S. Santamaria, having being duly sworn, hereby depose and state:

1. I am an investigative and law enforcement officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18 of the United States Code.

2. I have been employed as a Special Agent with the Federal Bureau of Investigation for more than three years. I am currently assigned to the Miami Field Office, where I am assigned to a squad that investigates health care fraud, false claims, money laundering, and related offenses. I have participated in health care fraud and money laundering investigations, and have received training in the investigation of these crimes.

3. This Affidavit is written in support of a criminal complaint charging that ALYD DAZZA (DOB: 12/17/1963) and MONIKA BLACIO (05/01/1968) did knowingly and willfully make materially false, fraudulent, and fictitious statements or representations in a matter within the jurisdiction of the executive, legislative, or judicial branch of the United States government, in violation of 18 U.S.C. § 1001(a)(2). The criminal complaint further charges that RICCO DAZZA (DOB: 4/11/1966) did knowingly and willfully falsify, conceal, or cover up by any trick, scheme, or device a material fact within the jurisdiction of the executive, legislative, or judicial branch of the United States government, in violation of 18 U.S.C. § 1001(a)(1).

4. The facts set forth herein are based on my own personal knowledge, observations, and experience, as well as information gathered from other law enforcement agents, data analysts, civilian witnesses, bank records, and other sources. This Affidavit is being submitted for the limited purpose of establishing probable cause that ALYD DAZZA, RICCO DAZZA, and MONIKA BLACIO violated Title 18, United States Code, Section 1001. Therefore, I have

not included each and every fact known to me concerning this investigation. Instead, I have only set forth those facts and circumstances that I believe are necessary to establish probable cause to obtain a criminal complaint.

## BACKGROUND FACTS: CASE NO. 09-CR-20523-SEITZ

5.  Starting at least as early as February 2009, law enforcement agents from the Federal Bureau of Investigation (FBI), Broward County Sheriff's Office (BSO), and the Internal Revenue Service (IRS) began investigating a network of twenty-nine (29) suspected fraudulent health care providers located in Florida, Georgia, North Carolina, South Carolina, and Louisiana (hereinafter "suspect providers"). The chart attached hereto as Exhibit A identifies the suspect providers, and their geographical location.

6.  Law enforcement agents discovered that the suspect providers had submitted approximately $46.3 million of false and fraudulent claims to various Medicare Advantage plans[1] for specialized medications and medical services typically administered to patients suffering from HIV, AIDS, cancer, or other disorders. For example, preliminary investigation revealed that two of the purported clinics-- Fast Cure Company ("Fast Cure") and Best Cure Company LLC ("Best Cure") in Louisiana—were merely empty storefronts with handwritten business signs. Two other purported clinics-- Magestic Group Service Inc. ("Magestic Service") in South Carolina and Ziallet Services, Inc. ("Ziallet Services") in North Carolina—were merely P.O. Boxes. Law enforcement officers also conducted interviews of numerous Medicare Advantage beneficiaries that purportedly received service at Fast Cure, Best Cure, Magestic Service, Zialett Services, First Choice Group Services, Inc. ("First Choice Services"), and Bibb Group Services, Inc. ("Bibb Services"). These patients revealed that they never heard of the

---
[1] The Medicare Advantage program is described at length in the government's previous Complaint (Case No. 09-mj-2617-RLD, D.E. No. 1) and Indictment (Case No. 09-CR-20523-SEITZ, D.E. 40).

2

Case 1:09-cr-20609-PAS   Document 1   Entered on FLSD Docket 07/09/2009   Page 5 of 11

suspect providers, and had never received any medical goods or services from the suspect providers. Other details of the investigation are summarized in the Government's previous Criminal Complaint & Affidavit (Case No. 09-mj-2617-RLD, D.E. No. 1).

7. Law enforcement agents, based on an examination of bank records and other documents, determined that each of the suspect health care providers shared a common link, namely, they negotiated or attempted to negotiate insurance company checks at two (2) Miami-area check cashing stores. The first check cashing store, Universal Money Fast, located at 117 NE 2nd Avenue in Miami, Florida, is owned by ALYD DAZZA. The second check cashing store, Rapid Trans Solution, Inc., located at 14811 NW 89 Avenue, Miami Lakes, FL 33018, is owned by MONIKA BLACIO.

8. The owners of the two (2) check cashing stores-- ALYD DAZZA and MONIKA BLACIO—began cooperating with the government at least as early as April 2009. ALYD DAZZA and MONIKA BLACIO admitted, during the course of multiple interviews, that they knowingly laundered or attempted to launder Medicare fraud proceeds for the suspect providers identified in Exhibit A. Specifically, ALYD DAZZA and MONIKA BLACIO would accept delivery of insurance company checks made payable to the suspect providers, and then deposit said checks into the corporate bank accounts of their respective check cashing stores at People's Credit Union. Later, after the checks cleared, ALYD DAZZA and BLACIO would withdraw large sums of cash from People's Credit Union, retain a commission, and then deliver the remaining cash to the owners of the fraudulent medical clinics.

9. During the above-referenced interview sessions, law enforcement officers ordered DAZZA and BLACIO to cease their illegal activity, and directed them not to withdraw or

3

otherwise access the remaining funds in their corporate bank accounts of their respective check cashing stores.

10. In April 2009, RICCO DAZZA also began cooperating with the government. By way of background, RICCO DAZZA is the brother of ALYD DAZZA, and the romantic partner of MONIKA BLACIO. During the course of multiple interviews, RICCO DAZZA admitted that he was involved in the above-referenced fraud scheme; he formed and operated two of the fraudulent medical clinics—Magestic Service in South Carolina and Ziallet Service in North Carolina. DAZZA admitted that both clinics were completely fraudulent, and were nothing more than P.O. Boxes. Law enforcement instructed RICCO DAZZA to cease any illegal activity.

11. Over the ensuing weeks, ALYD DAZZA, RICCO DAZZA, and MONIKA BLACIO rendered proactive assistance to the government. Working under the direction of the federal agents, they captured multiple recordings of coconspirators.

12. Based on the foregoing investigation, on June 18, 2009, a Grand Jury in the Southern District of Florida returned a multiple count Indictment (Case No. 09-20523-SEITZ) charging ALYD DAZZA, RICCO DAZA, MONIKA BLACIO and five coconspirators with various offenses including conspiracy to commit health care fraud, conspiracy to commit money laundering, and aggravated identity theft.

### FALSE STATEMENTS TO FEDERAL AGENTS

13. Law enforcement agents discovered, through civilian interviews and bank record examination, that ALYD DAZZA and MONIKA BLACIO withdrew substantial amounts of cash from their corporate bank accounts *after* they began cooperating with the government.

Specifically, ALYD DAZZA withdrew $10,000 on April 3, 2009; $20,000 on April 9, 2009, and $10,000 on April 17, 2009.  MONIKA BLACIO withdrew $10,000 on April 17, 2009.[2]

14. Law enforcement agents scheduled debriefing sessions with ALYD DAZZA, MONIKA BLACIO, and RICCO DAZZA in order to determine the reason for these large cash withdrawals.

15. MONIKA BLACIO was debriefed at the United States Attorney's Office in Miami on July 6, 2009 and July 7, 2009.  BLACIO admitted that she withdrew $10,000 from the corporate bank account of Rapid Trans Solutions, in contravention of your affiant's instructions. In an attempt to justify or explain the large cash withdrawal, BLACIO provided your affiant with a purported legal contract, allegedly evidencing that BLACIO borrowed $36,000 from an Ecuadorian company named "Jusanep S.A." in July 2008.  BLACIO stated that she withdrew $20,000 from the corporate bank account of Rapid Trans Solutions in order to repay a portion of this Ecuadorian loan.  Following this explanation, BLACIO was asked repeatedly whether the contract was "real" or "legitimate."  BLACIO stated repeatedly that the contract was legitimate, and evidenced a real loan.  Later, after further questioning, BLACIO admitted that the contract was forged, and was created to deceive law enforcement officers.  BLACIO further admitted that she discussed the forged document with ALYD DAZZA and RICCO DAZZA prior to the debriefing session.  According to BLACIO, ALYD DAZZA and RICCO DAZZA both knew the document was forged, and both knew it would be used to deceive law enforcement officers. BLACIO further indicated that she and the DAZZA brothers discussed how they would use the forged contract as "justification" to withdraw an additional $16,000 from the Rapid Trans

---

[2] BLACIO also withdrew $10,000 on April 6, 2009, just one week before she was first debriefed by federal law enforcement agents.  BLACIO never mentioned this withdrawal during her debriefing sessions.

5

Solutions corporate bank account, given that the total face value of the contract was $36,000 (and only $20,000 had been withdrawn to date).

16. ALYD DAZZA was debriefed at the United States Attorney's Office on July 7, 2009. ALYD DAZZA admitted that he withdrew cash on multiple occasions from the corporate bank account of Universal MoneyFast, in contravention of your affiant's instructions. Later in the interview, ALYD DAZZA was confronted with the purported contract evidencing a $36,000 loan from "Jusanep S.A." to MONIKA BLACIO. ALYD DAZZA admitted that he had seen the contract previously, and knew that BLACIO planned to use it to "explain" her cash withdrawals. DAZZA stated repeatedly, however, that to the best of his knowledge, the contract was legitimate. Upon further questioning, ALYD DAZZA eventually admitted that he knew the contract was forged, and that he had previously discussed with BLACIO how the contract would be used to deceive law enforcement officers. ALYD DAZZA further admitted that he created a story to justify his own cash withdrawals. Specifically, ALYD DAZZA initially planned to tell law enforcement officers that he withdrew cash to repay an amount owed to a grocery store owner, who was previously a client of his check-cashing store. DAZZA admitted, however, that this story was not entirely true. DAZZA stated that a portion of the funds were used to repay the grocery store owner, but that the remaining funds were used either for personal expenses, or given to his ALYD DAZZA's sister to keep as "backup."

17. RICCO DAZZA was debriefed at the United States Attorney's Office on July 7, 2009. RICCO DAZZA admitted that the purported contract from "Jusanep S.A." was forged, and that he had previously discussed with BLACIO how the contract would be used to deceive law enforcement officers. RICCO DAZZA further admitted that he, ALYD DAZZA, and MONIKA BLACIO planned to use the contract as justification to withdraw an additional

$16,000 from the corporate bank account of Rapid Trans Solutions. RICCO DAZZA was then questioned in detail about how he and BLACIO spent the cash that BLACIO already withdrew from the corporate bank account of Rapid Trans Solutions. RICCO DAZZA recited a detailed list of purported expenditures with dollar totals. RICCO DAZZA was asked repeatedly if the list was complete, and he responded in the affirmative. After being confronted with specific facts, RICCO DAZZA admitted that he used a substantial portion of the money to purchase a Jet Ski for his son. RICCO DAZZA admitted that he purposefully omitted and concealed this expenditure from your affiant during earlier questioning.

## **CONCLUSION**

18.     Based on the foregoing facts, I respectfully submit there is probably cause to believe that on or about April 6, 2009 and April 7, 2009, respectively, MONIKA BLACIO (05/01/1968) and ALYD DAZZA (DOB: 12/17/1963) did knowingly and willfully make materially false, fraudulent, and fictitious statements or representations in a matter within the jurisdiction of the executive, legislative, or judicial branch of the United States government, in violation of 18 U.S.C. § 1001(a)(2). I further submit there is probable cause to believe that on or about April 7, 2009, RICCO DAZZA (DOB: 4/11/1966) did knowingly and willfully falsify, conceal, or cover up by any trick, scheme, or device a material fact within the jurisdiction of the

executive, legislative, or judicial branch of the United States government, in violation of 18 U.S.C. § 1001(a)(1).

FURTHER AFFIANT SAYETH NAUGHT

                                        LIZ S. SANTAMARIA
                                        SPECIAL AGENT
                                        FEDERAL BUREAU OF INVESTIGATION

Sworn to and subscribed before
me this 8th day of July 2009

CHRIS M. McALILEY
UNITED STATES MAGISTRATE JUDGE

# EXHIBIT A
# SUSPECT PROVIDERS

| Purported Medical Clinic | City | State |
| --- | --- | --- |
| ACHE GROUP SERVICES | Augusta | GA |
| BELLEMEADE ONCOLOGY CARE | Marietta | GA |
| BEST CARE SOLUTIONS CORP | Brinswick | GA |
| BEST CURE COMPANY LLC | Kenner | LA |
| BIBB GROUP SERVICES INC | Warner Robbins | GA |
| COMPREHENSIVE MEDICAL CARE | Woodstock | GA |
| ELUSIVE QUALITY LLC | Atlanta | GA |
| FAST CURE COMPANY | Kenner | LA |
| FIRST CHOICE GROUP SERVICES INC | Macon | GA |
| HIGH SPEED ACCESS COMPANY LLC | Atlanta | GA |
| HOMESTED (sic) MEDICAL GROUP | Getna | LA |
| IN EXCESS LLC | Atlanta | GA |
| INTERNAL MEDICINE ASSOCIATES, P.C. | Macon | GA |
| JC HEALTH, INC. | MIAMI | FL |
| MAGESTIC GROUP SERVICE INC. | Rockhill | SC |
| MAJESTIC MEDICAL & REHAB CENTER | Miami | FL |
| MEDICAL SERVICES OF NORTHERN GEORGIA | Atlanta | GA |
| MEDICAL SERVICES OF SOUTHERN GEORGIA INC | Atlanta | GA |
| MORE THAN READY CO LLC | Atlanta | GA |
| NEW AGE FAMILY INSTITUTE | Atlanta | GA |
| NEW HORIZON ONCOLOGY CENTER | Atlanta | GA |
| NORTH ONCOLOGY INSTITUTE | Marietta | GA |
| OMNI SOLUTIONS LLC | Marietta | GA |
| RST GROUP INC. | Atlanta | GA |
| SOUTHEAST MEDICAL CENTER OF MIAMI | Miami | FL |
| STR OF GEORGIA INC. | Atlanta | GA |
| STRONG HOPE COMPANY LLC | Atlanta | GA |
| WEST COAST THERAPY AND REHAB. CTR., INC | Miami | FL |
| ZIALLET SERVICES, INC. | Huntersville | NC |